Muse v. State 






NO. 10-90-124-CR


IN THE
COURT OF APPEALS
FOR THE
TENTH DISTRICT OF TEXAS
AT WACO

* * * * * * * * * * * * *

Â Â Â Â Â Â Â Â Â Â CLINTON AARON MUSE, JR.,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant
Â Â Â Â Â Â Â Â Â Â v.

Â Â Â Â Â Â Â Â Â Â THE STATE OF TEXAS,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee

* * * * * * * * * * * * *

 From the 54th Judicial District Court
McLennan County, Texas
Trial Court # 90-159-C

* * * * * * * * * * * * *

O P I N I O N

* * * * * * *
Â Â Â Â Â Â Â Â Â Â Appellant was charged by indictment with the third-degree felony offense of forgery by
possession. A jury found him guilty and assessed punishment at one year in a community
correctional facility and a $5,000 fine. The Court then entered a judgment of guilty but, contrary
to the jury's verdict, assessed punishment at one year in the McLennan County Jail and a $5,000
fine. We will affirm the Court's judgment of guilt, modify the judgment to assess punishment at
one year in a community correctional facility and a $5,000 fine, and remand the portion of the
cause involving the determination as to which community correctional facility Appellant shall be
sentenced.
Â Â Â Â Â Â Â Â Â Â Appellant, through his first three points of error, contends that the trial court erred in
issuing an unauthorized instruction to the jury that the McLennan County Jail is a community
correctional facility.
Â Â Â Â Â Â Â Â Â Â According to Â§ 12.34 of the Texas Penal Code, an individual adjudged guilty of a felony
of the third degree shall be punished by either confinement in the Institutional Division of the
Texas Department of Criminal Justice for any term of not more than ten years or less than two,
or confinement in a community correctional facility for a term of not more than a year. A fine not
exceeding $10,000 may also be imposed. Tex. Penal Code Ann. Â§ 12.34 (Vernon Supp. 1991)
(hereinafter Â§ 12.34). During their deliberations on punishment, the jury, not knowing what
constitutes a community correction facility, requested a definition of the term from the trial court. 
The following excerpt is the judge's response to the jury's question:
COURT: I have a note which reads as follows: What does a community based
correctional system consist of, and it's signed Lester Lancaster, Foreperson. The Penal
Code does not define what a community based correctional facility is. A community
correctional facility. I intend to instruct them that the only community correctional facility
in McLennan county would be the McLennan County Jail. I intend to instruct them that
the community correctional facility in McLennan County, is the McLennan County Jail,
unless you all have any suggestions. What does the community board correctional system
consist of, you are instructed that the community correctional facility in McLennan County
is the McLennan County Jail. Does the State have any objections?

Â Â Â Â Â Â Â Â Â Â [PROSECUTOR]: None from the State, your Honor.

Â Â Â Â Â Â Â Â Â Â COURT: Any objections?

Â Â Â Â Â Â Â Â Â Â [APPELLANT'S COUNSEL]: None, your Honor.

Here, the jury, having been instructed that the McLennan County Jail is a community correctional
facility, returned a verdict assessing Appellant's punishment at confinement in a community
correctional facility for a term of one year and a $5,000 fine. The court then sentenced Appellant
to one year in the McLennan County Jail and a $5,000 fine. Thus, the issue raised by Appellant's
first three points of error is whether the trial court's designation of the McLennan County Jail as
a community correctional facility was unauthorized by the Texas Legislature.
Â Â Â Â Â Â Â Â Â Â Because the Legislature has failed to define "community correctional facility" statutorily,
we must ascertain what they meant by the term through statutory construction. The most common
thread running through legal maxims on statutory construction is that the judiciary must choose
the construction which best effectuates the intent of the Legislature. See Patterson v. State, 769
S.W.2d 938, 940 (Tex. Crim. App. 1989). The intent of the Legislature is generally obtained
from the language and legislative history of the statute as a whole. See Newsom v. State, 372
S.W.2d 681, 682-683 (Tex. Crim. App. 1963). If the Legislature did not intend for county jails
to be community correctional facilities, then the court's sentence was unauthorized.
Â Â Â Â Â Â Â Â Â Â An investigation into the legislative history behind the passage of current Â§ 12.34 reveals
an express refusal by the State Legislature to allow county jails to serve as community correctional
facilities. Several factors support this conclusion. First, a provision in an approved amendment
to Â§ 12.34, which would have included county jails as a possible place of confinement for third-degree felons, was purposefully deleted. General Counsel for the County Judges and
Commissioners Association, Jim Allison, commented in a hearing before the Senate Criminal
Justice Committee,
Â 
We do feel that sentence in a county jail for a felony is a significant change in who is
responsible for convicted felons... [If third-degree felons] are going to do a year, ... it
ought to be in a community corrections facility sponsored and paid for by the state and not
in a county jail which is not a proper place for a felony.

That the provision allowing for third-degree felons to be confined in county jails was then deleted
evidences that the Legislature did not want third-degree felons to be removed from state authority
and placed under the province of county government. Second, Section 3(b) of Article 42.131 of
the Texas Code of Criminal Procedure specifically requires the existence of a Community Justice
Council or a similar agency as a prerequisite to the creation of a community correctional facility. 
See Tex. Code Crim. Proc. Ann. art. 42.131, Â§ 3(b) (Vernon Supp. 1991). McLennan County
has neither. Third, the Legislature intended community correctional facilities to be a new
creation, designed to rehabilitate third-degree felons and integrate them into the society of the local
community. See id. at art. 42.13, Â§ 1. The McLennan County Jail has none of the rehabilitative
qualities attributable to community correctional facilities. Fourth, McLennan County has never
designated a community correctional facility. And fifth, community correctional facilities are to
be under the supervision of Community Justice Councils, not the county sheriff. From these
factors, the conclusion necessarily follows that the Legislature did not intend for county jails to
be considered community correctional facilities. Therefore, the trial court's sentence was
unauthorized.
Â Â Â Â Â Â Â Â Â Â Rule 80(b) of the Texas Rules of Appellate Procedure states,
The court of appeals may: (1) affirm the judgment of the court below, (2) modify the
judgment of the court below by correcting or reforming it, (3) reverse the judgment of the
court below and dismiss the case or render the judgment or decree that the court below
should have rendered, or (4) reverse the judgment of the court below and remand the case
for further proceedings.

Tex. R. App. P. 80(b). Now that the sentence has been shown to have been unauthorized, our task
is to rule upon the judgment accordingly.
Â Â Â Â Â Â Â Â Â Â Article 42.01 of the Code of Criminal Procedure declares that the defendant should be
punished in accordance with the jury's verdict. Tex. Code Crim. Proc. Ann. art. 42.01, Â§ 1(8)
(Vernon Supp. 1991). Further, where the trial court's judgment differs from the jury's verdict,
the judgment should be reformed to reflect the jury's verdict. Chudleigh v. State, 540 S.W.2d
314, 319 (Tex. Crim. App. 1976). Such is the situation in this case. The jury actually issued the
authorized verdict of one year in a community correctional facility and a fine of $5,000, but the
trial court then sentenced Appellant to one year in the McLennan County Jail and a fine of $5,000. 
Therefore, we will reform the judgment of the trial court to conform to the jury's verdict.
Â Â Â Â Â Â Â Â Â Â The State, by way of reply, maintains that Appellant waived the error by failing to object
to the unauthorized instruction of the court, despite an express request by the judge. Further, the
State claims that, because the court's error was not calculated to injure Appellant's rights nor
prevented him from receiving a fair and impartial trial, the error was not fundamental and
Appellant may not raise the issue on appeal.
Â Â Â Â Â Â Â Â Â Â Where a defect of either state or federal constitutional magnitude has not been established
at the time of trial, the failure of counsel to object does not constitute waiver. Ex Parte Chambers,
688 S.W.2d 483, 486 (Tex. Crim. App. 1985), cert. denied, 106 S.Ct. 181, 88 L.Ed.2d 150
(1985) (quoting Cuevas v. State, 641 S.W.2d 558 (Tex. Crim. App. 1982)). Article II, Â§ 1, of
the Texas Constitution states:
The powers of the Government of the State of Texas shall be divided into three distinct
departments, each of which shall be confided to a separate body of magistracy, to wit:
Those which are Legislative to one, those which are Executive to another, and those which
are Judicial to another; and no person, or collection of persons, being of one of these
departments, shall exercise any power properly attached to either of the others, except in
the instances herein expressly permitted.

Tex. Const. art. II, Â§ 1. The fixing of penalties for crime is a legislative function. Ex Parte
Davis, 412 S.W.2d 46, 50 (Tex. Crim. App. 1967). What constitutes an adequate penalty is a
matter of legislative judgment and discretion, and the courts will not interfere therewith unless the
penalty prescribed is outside of constitutional limitations. Id. On occasion, appellate courts are
permitted to reform penalties which were given following an erroneous instruction where a fine
was assessed by the jury although the Legislature did not allow for one; however, an instruction
that falsely notifies the jury of the defendant's potential place of confinement goes beyond this
narrow exception. Tex. Code Crim. Proc. Ann. art. 37.10(b) (Vernon Supp. 1991); See Ex
Parte Johnson, 697 S.W.2d 605, 608 (Tex. Crim. App. 1985). The sentence in the instant case
infringes upon the exclusive power of the Legislature to affix penalties for the perpetration of a
given crime. Therefore, the trial court's error was fundamental, and Appellant's failure to object
did not waive the error.
Â Â Â Â Â Â Â Â Â Â The issue raised by Appellant's fourth point of error is whether reversible error was
committed when the State attempted to impeach Appellant with a prior arrest for burglary. The
State contends that Appellant "opened the door" to the questions asked by the prosecutor when he
made a blanket denial of not having had any trouble with the law in the past ten years, other than
a couple of speeding tickets.
Â Â Â Â Â Â Â Â Â Â It is well settled that, when a defendant chooses to waive his privilege against self-incrimination by voluntarily taking the witness stand, he is generally subject to the same rules as
any other witness. Bell v. State, 620 S.W.2d 116, 124 (Tex. Crim. App. 1981). The prosecutor
may question the defendant about prior arrests so long as the arrests resulted in final convictions
or the crime was one of moral turpitude. Tex. R. Crim. Evid. 609(a). An exception exists,
however, when the witness, by his direct testimony, leaves a false impression of the trouble he has
had with the police. Nelson v. State, 503 S.W.2d 543, 545 (Tex. Crim. App. 1974). Provided
the State pursues the matter of prior arrests in good faith and does not attempt to impeach the
defendant once he has denied having been arrested for the questioned crime, the defendant is
considered to have opened the door to the questions. Id.
Â Â Â Â Â Â Â Â Â Â Here, defense counsel asked Appellant if he had been in any trouble with the law since a
conviction for aggravated assault in 1978, to which he responded that aside from a couple speeding
tickets he had not. This blanket statement was sufficient to leave in the minds of the jurors a false
idea of Appellant's conduct as being exemplary. By asking his client if he had been in any trouble
since 1978, Appellant's counsel conveyed to the jurors the idea that Appellant had never been in
any trouble, even though he had been arrested for burglary in 1976 and convicted for possession
of marijuana in 1982. Therefore, the State was justified in asking Appellant about his arrest for
burglary to remove the false impression of Appellant's exemplary conduct.
Â Â Â Â Â Â Â Â Â Â Appellant further maintains that the State attempted to impeach him once he had denied the
arrest for burglary by asking him again if he had ever been arrested of the crime. Although the
State did ask Appellant twice if he had been arrested for burglary, his counsel objected
immediately after the second occurrence. The objection was sustained and the matter was not
pursued any further by the State. The fourth point of error is overruled.
Â Â Â Â Â Â Â Â Â Â We affirm the trial court's judgment of guilt, modify the judgment to assess punishment
at one year in a community correctional facility and a $5,000 fine, and remand the portion of the
cause involving the determination as to which community correctional facility Appellant shall be
sentenced.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â BOBBY L. CUMMINGS
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice

Before Chief Justice Thomas, Justice Cummings
Â Â Â Â Â Â Â Â Â Â Â and Justice Vance
Affirmed in part, modified in part, reversed and remanded in part
Opinion delivered and filed August 1, 1991
Publish



e Constitutional elements essential
to constitute a Âtrial by juryÂÂ include Âa unanimous verdict.ÂÂ  Randel v.
State, 153 Tex. Crim. 282, 296, 219 S.W.2d 689, 698 (1949) (op. on rehÂg); see
Ngo, 175 S.W.3d at 745; see also Tex.
Const. art. V, Â§Â 13; Tex.
Code Crim. Proc. Ann. art. 36.29 (Vernon 2006).Â  When the State Âput[s]
on evidence of the repetition of the same criminal act on different occasions,Â
Âthe jury must reach a unanimous verdict on which single, specific criminal act
the defendant committed.ÂÂ  Ngo, 175 S.W.3d at 747, 748.

Â Â Â Â Â  On appeal, McCormick proposes
the instruction:

You have been instructed that your verdict,
whether it is guilty or not guilty, must be unanimous.Â  The following
instruction applies to the unanimity requirement as to Count I.

Count I of the indictment accuses the defendant
of committing the crime of Indecency with a Child by touching the breast of
E[.]Â R[.]Â  In order to return a guilty verdict, all twelve of you must
agree as to the same specific act, if any, that constitutes the conduct alleged
in Count I.

(Br. at 23 (citing Fifth Circuit District Judges Association
Pattern Jury Instructions (Criminal Cases) Â§Â 1.25 (2001)).)Â  The
State argues, ÂAppellant is really complaining because several incidents could
have supported the indictment, but an election was not requested.ÂÂ  (Br. at 18 (citing OÂNeal v. State, 746 S.W.2d 769, 771-72 (Tex. Crim. App. 1988)).)Â 
The Court of Criminal Appeals has rejected an argument similar to the StateÂs:

The State posits that jury unanimity is required
only if the defendant requests an election between separate offenses.Â  A
request for an election, however, is not a prerequisite for implementing TexasÂ constitutional and statutory requirement of jury unanimity.Â  An election simply
limits the number of specific offenses that the jury may consider during its
deliberations.Â  .Â .Â .Â .Â  The failure to request an election does
not eliminate a defendantÂs right to a unanimous verdict.

Ngo, 175 S.W.3d at 738 (internal footnote omitted).Â 
The State acknowledges, ÂAllowing a jury to choose from several separate acts,
each of which is a violation of a specific statute, without requiring the jury
to agree on which act was committed violates the unanimity requirement.ÂÂ  (Br. at 18 (citing Ngo, 175 S.W.3d at 747-48).)Â  Without deciding that the
trial court erred by not submitting the specific instruction requested, we hold
that the trial court erred in failing to require unanimity on the specific instance
of indecency of which the jury found McCormick guilty.[3]

Â Â Â Â Â  As to harm, McCormick argues
only, ÂRecently, the Court of Criminal Appeals, in Ngo .Â .Â .
determined that appellant therein (who had not objected to the jury charge) had
suffered egregious harm when the trial court disjunctively submitted the
StateÂs theories of conviction in one general verdict form without a unanimity
instruction.ÂÂ  (Br. at 23 (citing Ngo, No. 0504-04, Loislaw at *8-*10 (Tex. Crim. App. Mar. 16, 2005)).)Â  McCormickÂs case is distinguishable from Ngo.Â  In
Ngo, Â1)Â the jury charge permitted a non-unanimous verdictÂ on a
disjunctive charge; Â2)Â during its closing argument, the State
forthrightly told the jury that it need not be unanimous in its verdictÂ;
Â3)Â Âthere were contested issues at trialÂÂ; and 4)Â Âboth the trial
judge and the prosecution misstated the lawÂ in voir dire.Â  Ngo, 175
S.W.3d at 750-51 (quoting Ngo v. State, 129 S.W.3d 198, 201-202
(Tex. App.ÂEastland 2004), affÂd, Ngo, 175 S.W.3d 738).Â  McCormick does
not point to, and we do not find, anything comparable here.Â  The State does not
argue harm.

Â Â Â Â Â  The evidence that McCormick
committed indecency with E.Â R. in the manner and on or about the date
alleged in the indictment was not distinct.Â  By the same token, the evidence
that McCormick did so on any other date was likewise weak.Â  The Texas Court of
Criminal Appeals has analyzed the harm from the possibility of a non-unanimous
verdict, in the context of the erroneous denial of a request for an election of
the offenses on which the State intended to rely for conviction, in Dixon v. Texas.Â  Dixon v. State, 201 S.W.3d 731, 735 (Tex. Crim. App.
2006).Â  Dixon concerned a prosecution for aggravated sexual assault of a
child.Â  Id. at 731; see Act of May 15, 2001, 77th Leg.,
R.S., ch. 459, Â§Â 5, 2001 Tex. Gen. Laws 893, 898-99 (amended 2003)
(current version at Tex. Penal Code Ann.
Â§Â 22.021(a) (Vernon Supp. 2006)).Â  There, at trial, the child victim
Ârelated a sequence of events that occurred every time appellant sexually
assaulted her.Â  .Â .Â .Â .Â  According to the victim, this sequence
of events occurred one hundred times.Â  Except for one time during the day, this
activity always occurred at night.Â  The child .Â .Â . gave no further
details regarding this activity.ÂÂ  Dixon at 732.Â  The Court of
Criminal Appeals held that the verdict based on the victimÂs undifferentiated
testimony did not violate the unanimity requirement:

Â Â Â Â Â  We .Â .Â . perceive no risk that
the present case led to a non-unanimous verdict.Â  The only distinguishing
detail among the one hundred offenses is that one occurred during the day,
while all the others happened at night.Â  .Â .Â .Â .Â  [T]here is
simply no basis in the record for the jury to believe that one incident
occurred during the day but that none occurred at night.Â  The nighttime
scenario being typical (ninety-nine out of one hundred), it is obvious from
this record that anyone who believed the complainantÂs allegations in any
respect would believe that sexual assaults occurred at night.

Dixon, 201 S.W.3d at 735.

[I]t is meaningless to say the jurors
.Â .Â . could have disagreed about which incident was the basis for
conviction.Â  The offenses were described as identical and any one of them could
have occurred on any given day during the time period appellant stayed with the
victimÂs family.Â  Aside from the day/night
distinctionÂ .Â .Â .Â , what precisely would the jurors be
disagreeing about?Â  Clearly, however, the jurors unanimously agreed that
appellant committed at least one sexual assault, at night, sometime during the year,
in the manner described by the complainant.

Id. n.23.Â 


Â Â Â Â Â  E.Â R.Âs testimony was
likewise undistinguished.Â  She testified as follows concerning McCormick on
direct examination:

Â Â Â Â Â  Q.Â Â  .Â .Â .Â .Â 
[D]id anything in terms of sexual contact ever escalate?

Â Â Â Â Â  A.Â Â  Yes, maÂam.

Â Â Â Â Â  Q.Â Â  Okay.Â  And howÂhow did
that escalate?

Â Â Â Â Â  A.Â Â  Um, he started making me
sit on his lap.Â  HeÂd grab me by the hips and make me sit on his lap.

Â Â Â Â Â  Q.Â Â  Okay.

Â Â Â Â Â  A.Â Â  .Â .Â .Â .

Â Â Â Â Â Â Â Â Â Â Â  He
would take his hand and he would rub my breasts and heÂd laugh like it was funny
or something.

(3 R.R. at 26.)

Â Â Â Â Â  Q.Â Â  .Â .Â .Â .Â 
Did you go over and sit down on his lap, you know, by yourself?

Â Â Â Â Â  A.Â Â  Usually, no.

Â Â Â Â Â  Q.Â Â  Okay.

Â Â Â Â Â  A.Â Â  Usually, IÂd be, like,
asking him a question or whatever, and he would sit me down.

Â Â Â Â Â  Q.Â Â  Okay.Â  What do you mean
by that?Â  Like, how would he sit you down?

Â Â Â Â Â  A.Â Â  He would grab my [sic] by
the hips and have me sit on his lap, my back toÂto him.

Â Â Â Â Â  Q.Â Â  Okay.Â  And what happened
when that would occur, when heÂd put you on his lap?

Â Â Â Â Â  A.Â Â  Like I said, sometimes he
would take his hand, he would rub my breasts, umÂ

Â Â Â Â Â  Q.Â Â  Was that on the outside
of your clothing or underneath your clothing?

Â Â Â Â Â  A.Â Â  At first, yes, maÂam.Â  At
first, it was on the outside of my clothing.Â  Eventually, he would reach up my
shirt.

Â Â Â Â Â  Q.Â Â  Okay.Â  And you said that
he would touch you on the outside of your clothing.Â  Where on the outside of
your clothing was he touching you?

Â Â Â Â Â  A.Â Â  My breast.Â  My nipple
area.

Â Â Â Â Â  Q.Â Â  Okay.Â  What would he do
whenever he would touch your breast?

Â Â Â Â Â  A.Â Â  He would
just take his finger and rub it.Â  If it poked out, heÂd laugh like it was
funny.

(3 R.R. at 26-27.)

Â Â Â Â Â  Q.Â Â  You said that, umÂthat
sometimes when heÂd put you on his lap that he would touch you on the outside
of your clothing and that eventually changed.Â  Do you recall any times when he
would touch you underneath your clothing?

Â Â Â Â Â  A.Â Â  Um, just on my breast.Â 
Um, IÂd be sitting on his lap and heÂd make me sit down and heÂd reach up my
shirt.

Â Â Â Â Â  Q.Â Â  Okay.Â  What would he do
then?

Â Â Â Â Â  A.Â Â  Same thing.Â  But this
time underneath my clothes.Â  He would rub my nipple and see if it could get
hard and laugh.Â  Sometimes heÂd kiss me.

Â Â Â Â Â  .Â .Â .Â .

Â Â Â Â Â  Q.Â Â  What was he wearing
whenever he would pull you onto his lap onÂon some of these occasions?

Â Â Â Â Â  A.Â Â  Sweatpants or shorts.

Â Â Â Â Â  Q.Â Â  Did you ever notice
anything after you would get up off of his lap?

Â Â Â Â Â  A.Â Â  Um, his shorts would have
a wet spot on them.

Â Â Â Â Â  Q.Â Â  Okay.Â  Did you notice
anything or feel anything sometimes when youÂ

Â Â Â Â Â  A.Â Â  You could feelÂ

Â Â Â Â Â  Q.Â Â  Âwould sit on his lap?

Â Â Â Â Â  A.Â Â  Âsometimes
you could feel his penis get hard and it would move.

(3 R.R. at 28-29.)

Â Â Â Â Â  In one of E.Â R.Âs letters
to her mother, she stated of McCormick:

ÂHeÂd have me sit on his lap and
sometimes heÂd kiss me on my lips.Â  When IÂd get up, his shorts would be all
wet with a spot on them.

ÂWhen IÂd be sitting on his lap I
could feel when sometimes his penis moved.Â  .Â .Â .Â .

ÂAfter a while he started to touch me on my
breasts.Â  He would take his finger and rub over my nipple to see if it would
get hard.Â  Sometimes he could kiss it really quick and then laugh.Â  It poked
out after he rubbed it.Â  .Â .Â .Â .Â

(3 R.R. at 76-77; see StateÂs
Ex. 4.)

Â Â Â Â Â  The evidence provides little
meaningful basis for distinguishing McCormickÂs acts of indecency by sexual
contact: whether McCormick laughed, whether he touched E.Â R. on the inside
or outside of her clothing, whether he kissed her, or whether he got an
erection.Â  By the reasoning of Dixon, however, the evidence here
creates little risk of a non-unanimous verdict.Â  See Dixon, 201 S.W.3d
at 735.Â  McCormick did not suffer egregious harm from the omission of a
unanimity instruction.Â  We overrule McCormickÂs second issue.

Â Â Â Â Â  Comment on Weight of
Evidence.Â  In McCormickÂs third issue, he contends that the trial court
commented on the weight of the evidence and thus erred.Â  See Tex. Code Crim. Proc. Ann. art. 36.14.Â 
ÂIn Texas, a trial judge must .Â .Â . refrain from making any remark
calculated to convey to the jury his opinion of the case.ÂÂ  Brown v. State, 122
S.W.3d 794, 798 (Tex. Crim. App. 2003); accord Stayton v. State, 32 Tex. Crim. 33, 35, 22 S.W. 38, 38 (1893).Â  

Â Â Â Â Â  McCormick complains of the
following italicized language in the instruction to the effect that the jury
should find him guilty if the jury found that McCormick Âengage[d] in sexual
contact with E[.]Â R[.] by touching the breast of E[.]Â R[.], a child
younger than seventeen years of age and not the spouse ofÂ McCormick.Â  (Br. at 26 (quoting I C.R. at 31) (emphasis added by McCormick).)Â  McCormick argues that the
trial court should have instructed the jury: Âengage[d] in sexual contact with
E[.]Â R[.] by touching the breast of E[.]Â R[.], and that E[.]Â R[.]
was then under the age of seventeen years and not the spouse ofÂ
McCormick.Â  (Br. at 26 (citing Paul J.
McClung, Jury Charges for the Texas Criminal [sic] 98-99 (1995))
(emphasis added by McCormick).)Â  We assume without deciding that the trial
court erred.

Â Â Â Â Â  McCormick does not argue
harm.Â  As to harm, the State points to the uncontroverted evidence that
E.Â R. was a child at the time of McCormickÂs sexual contact with her
breast and that E.Â R. was not McCormickÂs spouse, and to the StateÂs jury
argument that the jury must so find in order to find McCormick guilty of
indecency by sexual contact.Â  McCormick did not suffer egregious harm.Â  We
overrule McCormickÂs third issue.

Â Â Â Â Â  Ex Post Facto Application.Â 
In McCormickÂs fourth issue, he contends that the trial court instructed the
jury on law not in effect at the time of McCormickÂs offense, and thus erred.Â  

Â  Â Â Â  McCormick complains of the
trial courtÂs definition of Âsexual contactÂ:

Â Â Â Â Â  By the term Âsexual contact,Â as used
herein, is meant any touching by a person, including touching through clothing,
of the anus, breast, or any part of the genitals of a child, with intent to
arouse or gratify the sexual desire of any person; or, any touching of any part
of the body of a child including touching through clothing, with the anus,
breast, or any part of the genitals of a person with the intent to arouse or
gratify the sexual desire of any person.

(C.R. at 29.)Â  In particular,
McCormick complains of the language Âtouching through clothing.ÂÂ  McCormick
argues that the trial courtÂs definition comports with the current statutory
definition of Âsexual contact,Â but not with that in effect at the time of the
offenses alleged in the indictment.Â  Under the current statute, Âsexual
contact,Â for purposes of Section 21.11:

means the following acts, if committed with the
intent to arouse or gratify the sexual desire of any person:

Â Â Â Â Â  (1)Â  any touching by a person, including
touching through clothing, of the anus, breast, or any part of the genitals of
a child; or

Â Â Â Â Â  (2)Â  any touching of any part of the body
of a child, including touching through clothing, with the anus, breast, or any
part of the genitals of a person.

Tex. Penal
Code Ann. Â§Â 21.11(c) (Vernon
2003).Â  The definition was amended effective September 1, 2001, for offenses
committed on or after that date.Â  See Act of May 23, 2001, 77th Leg.,
R.S., ch. 739, Â§Â 2, sec. (c), 2001 Tex. Gen. Laws 1463, 1463 (current
version at Tex. Penal Code Ann.
Â§Â 21.11(c)); id. Â§Â§Â 3-4, 2001 Tex. Gen. Laws at 1463-64.

Â Â Â Â Â  At the time of McCormickÂs
offense, the statutory definition of Âsexual contactÂ for purposes of Penal
Code Chapter 21 was:

Â Â Â Â Â  ÂSexual contactÂ means the touching of the
anus, breast, or any part of the genitals of another person with intent to
arouse or gratify the sexual desire of any person.

Act of May 29, 1993, 73d Leg., R.S.,
ch. 900, art. 1, Â§Â 1.01, sec. 21.01(2), 1993 Tex. Gen. Laws at 3616, amended
by Act of May 23, 2001, 77th Leg., R.S., ch. 739, Â§Â 1, 2001 Tex. Gen.
Laws 1463, 1463.

Â Â Â Â Â  The case law, however, was
clear at the time of McCormickÂs offense that the definition of Âsexual
contactÂ included touching through clothing.Â  The Court of Criminal Appeals
Âclearly dismisse[d] the notion that Âa touchingÂ requires proof of flesh-to-flesh
contactÂ in 1978.Â  Deason v. State, 786 S.W.2d 711, 716 (Tex.
Crim. App. 1990), disavowed on other grounds, Gipson v. State, 844
S.W.2d 738, 740 (Tex. Crim. App. 1992) (Deason citing Resnick v.
State, 574 S.W.2d 558, 559-60 (Tex. Crim. App. [Panel Op.] 1978)).Â  Under
any other holding, Âa defendant who thrust his hand beneath a victimÂs
undergarments and fondled his or her genitals in a public place could not be
prosecuted for public lewdness if he were wearing a glove.ÂÂ  Resnick, 574
S.W.2d at 560.

Â Â Â Â Â  The trial court did not
instruct the jury on law not in effect at the time of the charged offenses, and
so did not err.Â  We overrule McCormickÂs fourth issue.

Â Â Â Â Â  Effective Assistance of
Counsel.Â  In McCormickÂs fifth issue, he contends that his trial counsel
failed to render the effective assistance of counsel.Â  ÂIn all criminal
prosecutions, the accused shall enjoy the right .Â .Â . to have the
Assistance of Counsel for his defence.ÂÂ  U.S.
Const. amend. VI; see Rompilla v. Beard, 545 U.S. 374, 380 (2005); Strickland v. Washington, 466 U.S. 668 (1984).Â  ÂIneffective
assistance under Strickland [v. Washington] is deficient
performance by counsel resulting in prejudice, with performance being measured
against an Âobjective standard of reasonableness,Â Âunder prevailing
professional norms.ÂÂÂ  Rompilla at 380 (quoting Strickland at
687, 688).Â Â  ÂIn every case the court should be concerned with whether, despite
the strong presumption of reliability, the result of the particular proceeding
is unreliable because of a breakdown in the adversarial process that our system
counts on to produce just results.ÂÂ  Strickland at 696.Â  ÂWithout proof
of both deficient performance and prejudice to the defense, .Â .Â . it
c[an]not be said that the sentence or conviction Âresulted from a breakdown in
the adversary process that rendered the result of the proceeding unreliableÂ
.Â .Â .Â .ÂÂ  Bell v. Cone, 535 U.S. 685, 695 (2002) (quoting
Strickland at 687).Â  ÂFailure to make the required showing of either
deficient performance or sufficient prejudice defeats the ineffectiveness
claim.ÂÂ  Robinson v. State, 22 S.W.3d 631, 636 (Tex. App.ÂWaco 2000,
pet. refÂd) (internal citation omitted).

Â Â Â Â Â  Â[C]ounsel is Âstrongly
presumedÂ to make decisions in the exercise of professional judgment.ÂÂ  Yarborough
v. Gentry, 540 U.S. 1, 5 (2003) (quoting Strickland, 466 U.S. at 690).

When counsel focuses on some issues to the
exclusion of others, there is a strong presumption that he did so for tactical
reasons rather than through sheer neglect.Â  That presumption has particular
force where a petitioner bases his ineffective-assistance claim solely on the
trial record, creating a situation in which a court Âmay have no way of knowing
whether a seemingly unusual or misguided action by counsel had a sound strategic
motive.Â

Gentry at 5-6 (quoting Massaro v. United States, 538
 U.S. 500, 505 (2003)) (internal citation omitted) (argument).Â  ÂA Strickland
claim must be Âfirmly founded in the recordÂ and Âthe record must
affirmatively demonstrateÂ the meritorious nature of the claim.ÂÂ  Goodspeed
v. State, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (quoting Thompson
v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)); accord Salinas v. State, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005).Â  ÂIn the absence of
anything in the record affirmatively demonstrating otherwise, we presume that
.Â .Â . counsel made a reasonable and strategic decision
.Â .Â .Â .ÂÂ  Salinas at 740.

Direct appeal is usually an inadequate vehicle
for raising such a claim because the record is generally undeveloped.Â  This is
true with regard to the question of deficient performanceÂin which counselÂs
conduct is reviewed with great deference, without the distorting effects of
hindsightÂwhere counselÂs reasons for failing to do something do not appear in
the record.

Goodspeed at 392 (internal footnotes omitted); see
Wiggins v. Smith, 539 U.S. 510, 523 (2003); Strickland, 466 U.S. at 689; Thompson at 814.Â  Â[T]rial counsel should ordinarily be afforded an
opportunity to explain his actions before being denounced as ineffective.ÂÂ  Goodspeed
at 392 (quoting Rylander v. State, 101 S.W.3d 107, 111 (Tex. Crim.
App. 2003)); accord Andrews v. State, 159 S.W.3d 98, 103 (Tex. Crim.
App. 2005).Â  ÂAbsent such an opportunity, an appellate court should not find
deficient performance unless the challenged conduct was Âso outrageous that no
competent attorney would have engaged in it.ÂÂÂ  Goodspeed at 392
(quoting Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).Â  

Â Â Â Â Â  McCormick first complains of
counselÂs Âfailing to request a limiting instruction regarding extraneous
offenses in the jury charge at the conclusion of the guilt-innocence phase.ÂÂ  (Br. at 31 (capitalization altered).)Â  McCormick does not point to the reasons for counselÂs
conduct in the record.[4]Â  Moreover, the decision not to request a
limiting instruction can constitute reasonable trial strategy.Â  See Garcia
v. State, 887 S.W.2d 862, 881 (Tex. Crim. App. 1994); Ali v. State, 26
S.W.3d 82, 88 (Tex. App.ÂWaco 2000, no pet.).Â Â Â  

Â Â Â Â Â  As to McCormickÂs other
allegations of ineffective assistance, he does not point to the reasons for
counselÂs conduct in the record, and does not argue that he was prejudiced by
counselÂs conduct.Â  

Â Â Â Â Â  McCormick does not establish
that he did not have the effective assistance of counsel.Â  We overrule
McCormickÂs fifth issue.

Â Â Â Â Â  CONCLUSION.Â 
Having overruled McCormickÂs issues, we affirm.

TOM GRAY

Chief Justice

Before Chief Justice Gray,

Â Â Â Â Â  Justice Vance, and

Â Â Â Â Â  Justice Reyna

Affirmed

Opinion delivered and filed January 10, 2007

Do not publish

[CR25]









[1]Â  The jury found McCormick not guilty in Count 2, which alleged
indecency with a child by exposure.Â  See Act of May 29, 1993, 73d Leg.,
R.S., ch. 900, art. 1, Â§Â 1.01, sec. 21.11(a)(2), 1993 Tex. Gen. Laws 3586,
3616 (amended 2001) (current version at Tex.
Penal Code Ann. Â§Â 21.11(a)(2)(A) (Vernon 2003)).





[2]Â  The State also urges us to reconsider our holding in Rodgers.Â 
See 180 S.W.3d 716.Â  We decline to do so.Â  See Ex parte Townsend, 137
S.W.3d 79, 82 (Tex. Crim. App. 2004); Awadelkariem v. State, 974 S.W.2d
721, 724-26 (Tex. Crim. App. 1998) (stare decisis).





[3]Â  The trial court instructed the jury, ÂIf you agree upon a
verdict, it must be by unanimous vote.ÂÂ  (C.R. at 34.)Â  The State does not
contend that, that instruction was sufficient.





[4]Â Â Â  McCormick points to counselÂs stated reason for
not objecting to hearsay evidence, in response to the trial courtÂs comment
that not objecting constituted Âtrial strategyÂ:

It is judge.Â  And if it please the Court, youÂll
notice that today the things that were brought up, I specifically asked [a
witness] about those.Â  And because I knew it was going to come up, because I
wanted to .Â .Â . ask those questions of [the witness].

(Br. at 37 (quoting 4 R.R. at 124, 125) (bracketed alterations
added); see McCormick Br. at 36-37.)